

**Driving progress through partnership**

**John N. Ellison**
Direct Phone: +1 212 205 6117
Email: jellison@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

August 2, 2023

**MEMO ENDORSED**

**Via ECF**

Re:  *Bryce Corp. v. XL Insurance America, Inc.*, No. 1:23-cv-01814-KPF (S.D.N.Y.) – Response to XL's Letter Proposing a Motion to Strike

Dear Judge Failla:

Pursuant to Rule 4(a) of the Court's Individual Rules of Practice, Plaintiff Bryce Corporation ("Bryce"), by and through its undersigned counsel, hereby responds to the request of XL Insurance America, Inc. ("XL") for a pre-motion conference with respect to XL's proposed motion *in limine* and/or to strike allegations of the Amended Complaint concerning the Loss Run that XL provided in the course of policy renewal negotiations to Bryce's insurance broker, Stephens Insurance, LLC ("Stephens"). (Dkt. No. 18, Ex. B). Bryce does not consent to XL's proposed motion and respectfully submits that the motion should not even be permitted to be filed.

### A Motion To Strike Is the Wrong Mechanism To Litigate XL's Evidentiary Contention.

XL's letter fails to identify a rule of federal civil procedure permitting its proposed motion. Bryce surmises that XL seeks to bring a motion pursuant to Rule 12(f), which allows a court, upon a motion, to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." XL, however, does not assert that the Loss Run is "redundant," "impertinent," or otherwise within the scope of Rule 12(f), arguing instead that the Loss Run is "not relevant" and "protected from disclosure." While the Loss Run is highly relevant and non-protected, even accepting XL's incorrect positions, relevancy and admissibility are the wrong standards for a motion to strike pleadings. As to Rule 12(f) motions, the United States Court of Appeals for the Second Circuit has instructed:

> Evidentiary questions . . . should especially be avoided at such a preliminary stage of the proceedings. Usually the questions of *relevancy* and *admissibility* in general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint — on the grounds that the material could not possibly be relevant — on the sterile field of the pleadings alone.

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (emphasis added).

"Courts disfavor the motion to strike, because it proposes a drastic remedy." 2 Moore's Federal Practice Civil § 12.37 (2023). While the Loss Run is not protected and Bryce is entitled to rely on it to prove its claims, relevancy and admissibility of evidence are not proper bases upon which to ground a Rule 12(f) motion, and XL's request should therefore be denied.

ABU DHABI ♦ ASTANA ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ BRUSSELS ♦ CENTURY CITY ♦ CHICAGO ♦ DALLAS ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG
HOUSTON ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH ♦ NEW YORK ♦ ORANGE COUNTY ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH
PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON
10/21/2022 12:04 PM



August 2, 2023
Page 2

### The Work Product Doctrine Does Not Permit Preclusion of Material Voluntarily Disclosed Outside of Discovery.

The work product doctrine is a rule of discovery.  As codified in Rule 26(b)(3), "this doctrine prohibits one party in litigation from discovering from its adversary any 'documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative,' absent a showing of substantial need."  *N.Y. Times Co. v. United States DOJ,* 939 F.3d 479, 489 (2d. Cir. 2019) (*quoting* Rule 26(b)(3)).  The work product doctrine does not "protect facts concerning the creation of work product, or facts contained within work product."  6 Moore's Federal Practice § 26.70.

Bryce did not seek the Loss Run in discovery.  Indeed, in XL's description of the facts, XL provided the Loss Run voluntarily to Bryce's insurance broker during the course of negotiating the terms, conditions, and premium of an insurance policy renewal on January 17, 2023, almost two months before Bryce brought this action, and more than six months before either party served discovery.[1]  XL provides no explanation for why a discovery rule should be applicable to XL's pre-litigation, voluntarily disclosure, as part of a business transaction.[2]

*Lava Trading, Inc. v. Hartford Fire Insurance Co.*, on which XL relies, concerns a discovery dispute and does not assist XL's position.  No. 03-cv-7037, 2005 U.S. Dist. LEXIS 466 (S.D.N.Y. Jan. 10, 2005).  In discovery, defendant Hartford Fire Insurance Company produced two documents containing reserve information and later sought a protective order requiring the return of those documents, arguing they were inadvertently produced.  *Id.* at *1.  While the court denied the request for a protective order, the analysis the court undertook in *Lava Trading* is not appropriate in this case because XL did not produce the Loss Run in discovery but provided it in the normal course of business prior to either litigation or discovery.

### The Loss Run Is Not Work Product.

While the grounds identified above are each sufficient alone to deny XL's proposed motion, even in the context of discovery, the Loss Run would not be entitled to any protection.  An insurance carrier's reserve decisions made in the ordinary course of business are not eligible for protection and are generally discoverable.  *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 284 F.R.D. 132, 139 (S.D.N.Y. 2012) (ordering production of reserve information); *866 E. 164th St., LLC v. Union Mut. Fire Ins. Co.*, No. 16-cv-3678, 2016 U.S. Dist. LEXIS 162703, at *5 (S.D.N.Y. Nov. 23, 2016) (rejecting insurer's argument that reserve information was either proprietary business information or created in

---

[1] Contrary to XL's statement, the work product doctrine is waived by disclosure to an adversary.  *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d. Cir. 1993).

[2] As noted in *Fayemi v. Hambrecht & Quist, Inc.*: "Language in some cases suggests that there may be no basis whatever for a court to exercise control over information obtained outside the discovery process." 174 F.R.D. 319, 324 (S.D.N.Y. 1997) (citing *Bridge C.A.T. Scan Assocs. v. Technicare Corp.*, 710 F.2d 940 (2d Cir. 1983) and *Kirshner v. Uniden Corp. of America*, 842 F.2d 1074 (9th Cir. 1988)).  In *Fayemi*, the court concluded that a court's inherent equitable power nevertheless permitted sanction of a party that had ***illegally*** obtained information outside of discovery.  174 F.R.D. at 324; *see also Niceforo v. UBS Global Asset Mgmt. Ams.*, 20 F. Supp. 3d 428, 432 (S.D.N.Y. 2014) ("Courts will not preclude the use of evidence procured outside of normal channels without any indication of wrongdoing.").  Here, XL does not contend that Bryce obtained the Loss Run through wrongdoing.



August 2, 2023
Page 3

anticipation of litigation). Setting reserves for claims is a routine insurance business practice required by state insurance regulations to ensure the financial solvency of insurance companies. *See, e.g.*, N.Y. Ins. L. § 1303 ("Every insurer shall . . . maintain reserves . . . ."). Further, insurance companies routinely share loss run reports reflecting reserves with brokers and policyholders as part of the underwriting information exchange that occurs between insurance companies, brokers and policyholders when new insurance is being placed in the market. Goolsby Aff. Ex. A, at ¶ 5. In this case, XL provided the Loss Run to Bryce's insurance broker, Stephens, to inform renewal negotiations for Bryce's property and business interruption insurance, as XL has also done on other occasions. *Id.* at ¶ 6.

While XL asserts that the Loss Run was created in anticipation of litigation, it offers no facts suggesting that to be the case, although XL bears the burden on this issue. *See Monterey Bay Military Hous., LLC v. Ambac Assur. Corp.*, No. 19-cv-9193, 2023 U.S. Dist. LEXIS 9646, *29 (S.D.N.Y. Jan. 19, 2023) ("[T]he party claiming protection bears the burden of establishing that the material at issue . . . was prepared in anticipation of litigation" (citation omitted)). Indeed, XL's explanation that a clerk responsible for interactions with brokers as part of the underwriting information exchange provided the Loss Run to Stephens supports that the Loss Run was created and maintained in the ordinary course of business and contradicts the assertion that it had anything to do with litigation.

**The Loss Run Is Highly Relevant to Bryce's Claims in this Action.**

While relevance is not the correct standard for XL's proposed motion to strike, the Loss Run is highly relevant to XL's claims in this action. The Loss Run is relevant to establishing the value of the claims as well as XL's bad faith conduct in the adjustment of the insurance claims. As alleged in the Amended Complaint, XL has repeatedly insisted that Bryce's claims are worth substantially less than the amount that XL maintains in reserves, as reflected in the Loss Run. (Dkt. No. 18, at ¶ 106). The Loss Run is thus relevant to prove that XL violated its duty of good faith and fair dealing in seeking to pay Bryce less than the value of its claims. *See Fireman's Fund*, 284 F.R.D. at 139 (collecting cases on the relevance of reserve information). Bryce should be permitted to use this highly probative information in discovery and to prove its case on the merits.

Accordingly, XL's proposed motion is without merit and bringing it will only increase costs on Bryce and unnecessarily wastes judicial resources. As such, Bryce does not consent to XL's motion, and Bryce submits that this Court should deny XL leave to file its motion or deny the motion on the record before it.

Respectfully submitted,

John N. Ellison

JNE:sc

cc: All Counsel of Record via ECF

The Court is in receipt of Plaintiff's above letter, as well as Defendant's letters filed at docket numbers 27 and 28.  The Court will hold a telephonic premotion conference addressing the issues raised by the parties on **Wednesday, August 9, 2023, at 2:00 p.m.**  At the scheduled date and time, the parties are to call (888) 363-4749 and enter access code 5123533.

The Clerk of Court is directed to terminate the pending motion at docket numbers 27 and 28.

Dated:     August 3, 2023          SO ORDERED.
           New York, New York

                                   HON. KATHERINE POLK FAILLA
                                   UNITED STATES DISTRICT JUDGE