

DLA Piper LLP (US)
1251 Avenue of the Americas
27th Floor
-1104
www.dlapiper.com

Mark L. Deckman
Mark.Deckman@dlapiper.com
T  212.335.4518
F  917.778.8518

November 21, 2023

The Honorable Katherine Polk Failla
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**MEMO ENDORSED**

Re:   *Bryce Corporation v. XL Insurance America, Inc.*, No. 1:23-cv-1814 (S.D.N.Y.)

Dear Judge Polk Failla:

In accordance with this Court's Individual Rules, Defendant XL Insurance America, Inc. ("XL"), by its counsel, submits this letter in opposition to Plaintiff Bryce Corporation's ("Plaintiff") request for an informal discovery conference. Plaintiff's letter is premature, tactically driven, and riddled with inaccuracies. Pursuant to this court's Case Management Order, fact discovery is not set to be completed until January 19, 2024.  Moreover, many of Plaintiff's alleged disputes are nonexistent, and will be resolved naturally through XL's forthcoming supplemental productions. Accordingly, XL respectfully requests that this Court Deny Plaintiff's request for an informal conference, or in the alternative, defer ruling on Plaintiff's request until XL has had sufficient time to address Plaintiff's concerns.

**I.     Plaintiff's Letter is Premature.**

At the parties' November 1 meet-and-confer teleconference, XL agreed to make a supplemental production on November 13 to address many of Plaintiff's concerns — which XL did, in fact, make. Due to the size and scope of the requested production, XL was not able to address all of Plaintiff's concerns on its preferred timeline; however, XL is actively working to supplement its production and provide a corresponding privilege log. Counsel made this clear to Plaintiff in its correspondence accompanying XL's second production. *See* Exhibit A. Rather than afford counsel reasonable time to continue its discovery efforts and respond to its inquiry, Plaintiff filed this premature letter-motion, needlessly requiring XL to expend its time and resources that would have otherwise been invested in resolving many of Plaintiff's alleged disputes without judicial intervention.

For instance, as of the date of this filing, XL has already agreed to provide Plaintiff with document sections from its claims handling manuals and will do so on or before December 1, 2023. Similarly, XL will provide a privilege log to Plaintiff on or before December 11, 2023. Thus, many of Plaintiff's contentions will be rendered moot by XL's forthcoming supplemental productions.  With respect to engagement agreements and XL's document retention policy, XL is continuing to investigate the existence of those documents and intends to provide a status update to Plaintiff on or before December 1, 2023.  Indeed, in the interests of efficiency and practicality, this Court should deny Plaintiff's premature request for a Rule 37.2 Conference until a time when issues in dispute have truly ripened.

### II.     XL has and Continues to Conduct a Robust Search for Responsive Documents.

Plaintiff alleges that XL has not conducted a robust search for all responsive documents within its possession, custody, or control. To substantiate this claim, Plaintiff points to the fact that it seeks claims-handling manuals and certain unidentified documents that would necessarily be found elsewhere. However, contrary to Plaintiff's contentions, XL has agreed to provide Plaintiff access to its claims-handling materials.

Moreover, Plaintiff argues that "XL asserts that it is under no obligation to search outside of its underwriting or claim files for responsive documents." That is simply not true. Indeed, as conveyed during the November 1 meet and confer, any relevant documents from the custodians identified by Plaintiff are already contained in XL's claims and underwriting files. In an effort to address Plaintiff's concerns in that regard, XL has amended and supplemented its Responses to Plaintiff's First Set of Requests for Production and served them in advance of this filing. *See* Exhibit B. Beyond that, to the extent that Plaintiff seeks to explore XL's files for "certain documents" — which remain unidentified, "[d]iscovery requests cannot be based on pure speculation or conjecture." *Tottenham v. Trans World Gaming Corp.*, No. 00 CIV. 7697 (WK), 2002 WL 1967023 (S.D.N.Y. June 21, 2002).

Plaintiff also alleges that XL "asserts that its document production is complete." XL has never made any such assertion. To the contrary, XL is actively engaged in the review of additional documents to further supplement its first two productions. A fact that XL has repeatedly conveyed to Plaintiff during the parties' meet-and-confer and in subsequent communications. *See* Exhibit A. If anything, XL continues to diligently work in discovery to produce all relevant and responsive documents to Plaintiff's requests well in advance of the January 19, 2024 fact discovery deadline.

### III.    XL does Not have Possession, Custody, or Control Over J.S. Held's or Sedgwick's Documents.

Plaintiff requests that XL produce documents of non-parties J.S. Held and Sedgwick. However, XL cannot produce such documents because they are not in XL's possession, custody, or control. As Plaintiff acknowledges, J.S. Held and Sedgwick are independent third parties from whom XL purchased adjustment and accounting services. XL has neither the legal right nor practical ability to access J.S. Held's or Sedgwick's files, therefore, such documents are not within XL's possession, custody, or control. "Generally, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production." *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (internal quotations omitted). In any event, "[t]he party seeking discovery has the burden of showing that the documents are within the other party's control." *Smith v. Pergola 36 LLC*, 1:22-cv-4052 (LJL), 2022 WL 17832506, at *4 (S.D.N.Y. Dec. 21, 2022). Plaintiff has failed to meet its burden. Plaintiff offers only conclusory allegations that XL "surely has the control and practical ability" to obtain the documents it seeks from J.S. Held and Sedgwick. This is insufficient and falls well short of meeting Plaintiff's burden.

Plaintiff also fails to explain why it cannot obtain the documents it seeks from J.S. Held and Sedgwick directly through other standard discovery methods. As J.S. Held and Sedgwick are unaffiliated non-parties, Plaintiff is equally well situated to obtain any documents it seeks from them directly through the use of third-party subpoenas. To that end, XL understands that Plaintiff may have already issued subpoenas to J.S. Held and Sedgwick requesting such documents. If that is the case, Plaintiff's argument that this Court order XL to produce those documents not in their

possession, custody, or control is illogical, and in any event, Plaintiff's request is moot as to XL and serves only to seek an unfounded, unnecessary, and undue burden on XL.

### IV.    Reinsurance Information is Not Relevant to this Dispute.

Plaintiff contends that XL has improperly withheld documents relating to reinsurance information as irrelevant. To support its position, Plaintiff relies on *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132 (S.D.N.Y. 2012). However, Plaintiff's reliance is misplaced. "[T]he 'case law is sparse within the Second Circuit' concerning the discoverability of reinsurance information," and the determination is fact specific. *Id.* at 137. Here, the facts are inapposite to those in *Fireman's Fund Ins. Co.* There, the Court found reinsurance information relevant due to the insurer's cross-claim asserting fraud against the insured. *Id.* at 138. XL has not alleged that Plaintiff engaged in fraud, or asserted any counterclaims which would put its reinsurance information at issue.

Rather, XL's reinsurance information is not relevant to this dispute as it "involves a business decision, not a legal determination regarding policy interpretation or coverage." *U.S. Fire Ins. Co. v. City of Warren*, No. 2:10-CV-13128, 2012 WL 1454008, at *10 (E.D. Mich. Apr. 26, 2012). Federal courts across the country have also recognized the irrelevance of reinsurance information. *See, e.g.*, *Great Lakes Dredge & Dock Company v. Commercial Union Assurance Co.*, 159 F.R.D. 502, 504 (N.D.Ill.1995) ("Reinsurance agreements, which at best reflect an undisclosed unilateral intention, are irrelevant to determining the intent of the parties to the primary insurance contract. Thus, they would be non-discoverable."); *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 268 F.R.D. 692 (S.D. Fla. 2010) (reinsurance information held irrelevant); *Potomac Elec. Power Co. v. California Union Ins. Co.*, 136 F.R.D. 1 (D.D.C. 1990) ("This Court will not authorize a fishing expedition. … we hold that defendants need not provide Pepco with correspondence relating to these reinsurance agreements."). Accordingly, Plaintiff is not entitled to the production of such non-discoverable information, to the extent it even exists.

### V.    Documents Concerning Loss Reserves are Privileged Work Product.

Plaintiff maintains that XL must produce documents related to loss reserves, despite XL's objection that such documents are privileged work product. XL would be remiss not to point out that this subject of whether loss reserves are discoverable has already been fully briefed as part of XL's Motion to Strike or in the alternative to Preclude Reliance on Inadvertently Disclosed Information. *See* ECF Nos. 37, 40, 42. That Motion is currently pending before the Court. For the purposes of this letter brief, XL expressly adopts and incorporates those arguments in support of its Motion to Strike as if fully stated herein, and submits that the loss reserve documents are protected from disclosure.

For these reasons, XL respectfully requests that this Court Deny Plaintiff's request for an informal conference, or in the alternative, defer ruling on Plaintiff's request until XL has had sufficient time to address Plaintiff's concerns.

Respectfully Submitted,

/s/ *Mark L. Deckman*
Mark L. Deckman
Aidan M. McCormack
A. Neill Thupari (admitted *pro hac vice*)
DLA Piper LLP (US)

1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4500
mark.deckman@us.dlapiper.com
aidan.mccormack@us.dlapiper.com
neill.thupari@us.dlapiper.com

***Attorneys for Defendant***
***XL Insurance America, Inc.***

cc: *All Counsel of Record*

The Court is in receipt of Plaintiff's letter motion seeking a Rule 37.2 conference (Dkt. #43 ("Pl. Letter")), as well as Defendant's letter response in opposition (Dkt. #44 ("Def. Opp")).

The Court credits Defendant's representation that it is "actively engaged in the review of additional documents to further supplement its first two productions," that its review encompasses all responsive documents within its possession, custody, or control, and that its search has not been limited to its underwriting or claim files, as Plaintiff suggests. (Def. Opp. 2; Pl. Letter 1).

On or before **December 1, 2023**, Defendant shall, consistent with its letter, provide Plaintiff with a status update on its search for the underwriting and claims handling manuals, and the engagement agreements and document retention policies sought by Plaintiff. (Def. Opp. 1). On or before **December 11, 2023**, Defendant shall produce a privilege log, which log Defendant shall update as needed for future productions.

With respect to the J.S. Held and Sedgwick documents, the Court credits Defendant's representation that it has "neither the legal right nor practical ability to access J.S. Held's or Sedgwick's files," such that those materials are not within its possession, custody, or control, constructive or otherwise. (Def. Opp. 2). To the extent Plaintiff seeks these materials, it may issue subpoenas directly to either entity, pursuant to Fed. R. Civ. P. 45.

As for the reinsurance documents, the Court finds *Fireman's Fund* to be relevant in resolving the instant dispute, notwithstanding Defendant's attempts to distinguish the case based on its facts. *See Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132 (S.D.N.Y. 2012). (Def. Opp. 2; Pl. Letter 3). Indeed, what Defendant conveniently omits from its quotation of *Fireman's Fund* is that court's recognition that "the few cases [within the Second Circuit] to consider the issue have determined that reinsurance information is indeed discoverable." *Fireman's Fund,* 284 F.R.D at 137 (internal quotation marks omitted) (citing *Suffolk Fed. Credit Union* v. *Cumis Ins. Soc'y, Inc.*, 270 F.R.D. 141, 142 (E.D.N.Y. 2010)).

Such reinsurance information is discoverable, as it "reflect[s] an insurer's understanding of the risk it underwrote," which understanding is relevant to the issue of Defendant's alleged bad faith in adjusting and paying the claims at issue in this case. *Id.* at 138 (citation omitted).

Nor is the Court moved by the reasoning of *U.S. Fire Insurance Company v. City of Warren*, cited by Defendant. (Def. Opp. 3 (citing *U.S. Fire Ins. Co. v. City of Warren*, No. 10 Civ. 13128 (PJK), 2012 WL 1454008 (E.D. Mich. Apr. 26, 2012))). As discussed above, *Fireman's Fund* provides persuasive authority, from this Circuit, for the opposite conclusion, namely that reinsurance information is generally discoverable. 284 F.R.D. at 137. *City of Warren* is also distinguishable from the facts of the instant matter, as that case did not implicate the fact-intensive questions regarding claim valuation and adjustment that are at issue in the case before this Court. 2012 WL 1454008, at *10 (observing that the facts before the court related solely to the legal question of coverage).

Accordingly, to the extent that the reinsurance information pertains specifically to the underlying policy and related claims at issue in this case, Defendant is directed to produce such information, absent any basis other than relevance for withholding or redacting the documents. Any confidential and/or proprietary information may be produced pursuant to the Confidentiality Agreement entered into by the parties. (Dkt. #33). Defendant shall provide Plaintiff with an estimated timeline for that production on or before **December 11, 2023.**

Finally, the Court recognizes that the question of whether documents concerning loss reserves are work product is pending before this Court. (Dkt. #36 (Motion to Strike)). The Court will render its decision on that topic in due course. In the interim, Defendant need not produce such information, and shall instead focus its attention on meeting its other discovery obligations, as clarified by the Court's endorsement.

In light of the above directives from the Court, Plaintiff's letter motion for a Rule 37.2 conference is hereby DENIED as moot.

The Clerk of Court is directed to terminate the pending motion at docket number 34.

Dated:     November 28, 2023         SO ORDERED.
           New York, New York

                                     *Katherine Polk Failla*

                                     HON. KATHERINE POLK FAILLA
                                     UNITED STATES DISTRICT JUDGE